## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID KAUFMANN,<br><br>                        Plaintiff,<br><br>       v.<br><br>VIASAT, INC., RICHARD BALDRIDGE, MARK DANKBERG, JAMES BRIDENSTINE, ROBERT JOHNSON, SEAN PAK, VARSHA RAO, JOHN STENBIT, and THERESA WISE,<br><br>                        Defendants. | Civil Action No. _____<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br><br>**JURY TRIAL DEMAND** |

Plaintiff David Kaufmann ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against Viasat, Inc. ("Viasat" or the "Company") and Viasat's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to merge the Company with Connect Topco Limited d/b/a Inmarsat Holdings ("Inmarsat").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on May 20, 2022. The Proxy recommends that Viasat stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Viasat will acquire Inmarsat. The Proposed Transaction was first disclosed on November 8, 2021, when Viasat and Inmarsat announced that they had entered into a definitive

1

share purchase agreement (the "Merger Agreement") pursuant to which Viasat will acquire all of the outstanding ordinary shares of Inmarsat for $850 million in cash and will issue 46,363,636 shares of Viasat common stock (the "Stock Issuance"). The deal is valued at approximately $7.3 billion and is expected to close in the second half of calendar year 2022.

3.     The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial analyses conducted by PJT Partners LP ("PJT Partners"), Viasat's financial advisor, as well as potential conflicts of interest of PJT Partners.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to the Proxy to be disseminated to Viasat's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Viasat's stockholders. In the event the Stock Issuance and/or the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Viasat.

6.     Defendant Viasat is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 6155 El Camino Real, Carlsbad, California 92009. Viasat common stock trades on NASDAQ under the ticker symbol

"VSAT."

7.      Defendant Richard Baldridge has been a director of the Company since 2016. Defendant Baldridge has served as President and Chief Executive Officer ("CEO") since November 2020.

8.      Defendant Mark Dankberg has been a director of the Company since 1986. Defendant Dankberg is a founder of Viasat and served as CEO and Chairman of the Board from 1986 until November 2020. Defendant Dankberg currently serves as Executive Chairman of the Board.

9.      Defendant James Bridenstine has been a director of the Company since March 2021.

10.     Defendant Robert Johnson has been a director of the Company since 1986.

11.     Defendant Sean Pak has been a director of the Company since 2018.

12.     Defendant Varsha Rao has been a director of the Company since 2017.

13.     Defendant John Stenbit has been a director of the Company since 2004.

14.     Defendant Theresa Wise has been a director of the Company since 2020.

15.     Nonparty Connect Topco Limited is a private company organized and existing under the laws of Guernsey. Nonparty Inmarsat Holdings is the indirect parent company of Inmarsat Group Holdings Limited, which Inmarsat Holdings acquired on December 4, 2019.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

17.     Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

19.     Viasat is a communications company based in Carlsbad, California, with operations across the United States and worldwide. Viasat is a provider of high-speed satellite broadband services and secure networking systems covering military and commercial markets.

20.     On November 8, 2021, the Company entered into the Merger Agreement with Inmarsat. According to the press release issued that day announcing the Proposed Transaction:

**Viasat and Inmarsat To Combine, Creating A New Leading Global Communications Innovator**

***Accelerates Availability and Customer Choice for Broadband and IoT Services in Highly Competitive, Fragmented Global Markets***

***Complementary Resources and Assets Create New Opportunities for Enhanced Growth and Innovation in Multi-band, Multi-orbit, Hybrid Space and Terrestrial Networks***

***Increased Financial Strength and Resiliency Expected to Provide a Solid Foundation for Innovation and Capital Investment with Enhanced Free Cash Flow***

CARLSBAD, Calif., and LONDON, November 8, 2021 — Viasat Inc., (NASDAQ: VSAT), a global communications company, and Inmarsat, a leading provider of global mobile satellite communications services, today announced they have entered into a definitive agreement under which Viasat will acquire Inmarsat in a transaction valued at $7.3 billion, comprised of $850.0 million in cash,

4

approximately 46.36 million shares of Viasat common stock valued at $3.1 billion based on the closing price on Friday November 5, 2021, and the assumption of $3.4 billion of net debt.

The combination will create a leading global communications innovator with enhanced scale and scope to affordably, securely and reliably connect the world. The complementary assets and resources of the new organization will enable the availability of advanced new services in mobile and fixed segments, driving greater customer choice in broadband communications and narrowband services (including the Internet of Things or "IoT").

The combined company intends to integrate the spectrum, satellite and terrestrial assets of both companies into a global high-capacity hybrid space and terrestrial network, capable of delivering superior services in fast-growing commercial and government sectors. This advanced architecture will create a framework incorporating the most favorable characteristics of multi-band, multi-orbit satellites and terrestrial air-to-ground systems that can deliver higher speeds, more bandwidth, greater density of bandwidth at high demand locations like airport and shipping hubs and lower latency at lower cost than either company could provide alone.

Both companies have proven track records of product and service innovation. Viasat has advanced North American residential and aviation connectivity and defense communications with technology and business models embraced by customers. Viasat is also recognized for driving change through its pioneering ultra-high-capacity satellite technology, which has delivered superior value at attractive, affordable economics.

Inmarsat has an exceptional presence in the growing global mobility segment and is at the forefront of network design with its recently announced multi-dimensional mesh network. It is preparing to expand its global network later this year with its most powerful and advanced software-defined commercial communications satellites ever, offering both Ka- and L-band capabilities. Inmarsat has a global presence, a robust distribution channel spanning the rapidly growing mobility, government, IoT and enterprise sectors and currently provides safety and connectivity services to more than one million mobility and defense platforms.

The combined company will be able to offer:

- A broad portfolio of spectrum licenses across the Ka-, L- and S-bands and a fleet of 19 satellites in service with an additional 10 spacecraft under construction and planned for launch within the next three years.
- A global Ka-band footprint, including planned polar coverage, to support bandwidth-intensive applications, augmented by L-band assets that support all-weather resilience and highly reliable, narrowband and IoT connectivity.
- The ability to unlock greater value from Inmarsat's L-band spectrum and

existing space assets by incorporating Viasat's state-of-the-art beamforming, end-user terminal and payload technologies and its hybrid multi-orbit space-terrestrial networking capabilities.

- Viasat's highly vertically-integrated technology and service offerings, along with Inmarsat's extensive eco-system of technology, manufacturing and service distribution.

"This is a transformative combination that advances our common ambitions to connect the world. The unique fusion of teams, technologies and resources provides the ingredients and scale needed for profitable growth through the creation and delivery of innovative broadband and IoT services in new and existing fast-growing segments and geographies," said Viasat's Executive Chairman Mark Dankberg. "Inmarsat's dual-band global mobile network, unique L-band resources, skills and capabilities in the U.K. and excellent technical and operational talent worldwide, are powerful complements to Viasat's business. Together, we can advance broadband communications and create new hybrid space and terrestrial networks that drive greater performance, coverage, speed, reliability and value for customers. We look forward to welcoming the Inmarsat team into the Viasat family."

"Joining with Viasat is the right combination for Inmarsat at the right time," said Rajeev Suri, CEO of Inmarsat. "Viasat is a terrific innovator and Inmarsat brings some powerful additions: global reach, a broad distribution channel, robust business momentum and a presence in highly attractive global mobility segments. Together, the two companies will create a new global player with the scale and scope to help shape the future of a dynamic and growing industry. The combination will create a strong future for Inmarsat and be well-positioned to offer greater choice for customers around the world, enhanced scope for partners and new opportunities for employees. The industrial logic is compelling and ensures that the U.K. has a strong and sustainable presence in the critical space sector for the long term."

Rick Baldridge, Viasat's president and CEO added, "This strategic move gives Viasat the scale to increase the pace of innovation that drives new and better services for our customers, broadens the opportunities for our employees and provides a foundation for significant positive free cash flow, with potential upside from a revitalization of L-band and IoT service growth. Plus, we will have expanded scale and presence in the $1.6 trillion broadband and IoT sectors. I'm excited about the opportunities ahead and looking forward to setting up the combined organization for long-term success."

**Driving increased innovation and sustainability in the U.K. space sector**

Viasat plans to build on Inmarsat's presence in the U.K. and is committed to preserving and growing the investment of the combined company in U.K. space communications, as well as supporting the recently published National Space Strategy. The combined company will cooperatively engage with the U.K.

government with a view to operating in the U.K. consistent with the commitments previously made by Inmarsat/Connect BidCo, and expects continued constructive engagement across the U.K.'s thriving innovation ecosystem. It further intends to work closely with the U.K. government to bring additional space capabilities and other advanced technologies to the country as well as long-term, highly skilled engineering and related jobs for U.K.-based employees. Viasat plans to preserve and grow Inmarsat's London headquarters, as well as its footprint in Australia and Canada and across Europe, the Middle East, Africa and Asia Pacific.

**Transaction terms and financial highlights**

Under the terms of the agreement, Inmarsat's shareholders will receive $850.0 million in cash, subject to adjustments, and approximately 46.36 million newly issued Viasat shares valued at $3.1 billion, based on the closing price of $67.00 per Viasat share on November 5, 2021. At closing, on a pro forma basis, Inmarsat shareholders are expected to be issued shares representing an aggregate of 37.5% of Viasat stock on a fully diluted basis, with each of the existing Inmarsat shareholders receiving shares representing less than 10%.

The combined company's revenue and earnings profile is expected to be more diverse, resilient and global.Viasat estimates that the combined company has the potential for mid-teens percentage revenue and Adjusted EBITDA growth with a fully funded path to positive free cash flow, with upside from new IoT applications and greater utilization of global space assets.

This transaction is expected to deliver meaningful and enduring capital, operating and cross-selling revenue synergies, with operating and capital expenditure synergies alone expected to drive value creation of $1.5 billion on an after-tax NPV basis. In addition, both companies are nearing the end of unusually intensive capital investment cycles within the next 24 to 36 months and expect significant subsequent benefits from converging their respective architectures into a joint, high-performance global network.

**Financing overview**

Viasat has obtained financing commitments for $2.3 billion of new debt facilities required to complete this transaction, a portion of which is to be raised between signing and closing to fund Viasat's standalone growth expenditures. Viasat also plans to assume $2.1 billion in principal amount of Inmarsat senior secured bonds and $1.7 billion outstanding under Inmarsat's $2.4 billion of senior secured credit facilities. Viasat has also obtained commitments of $3.2 billion to backstop certain amendments required under Viasat's $700 million credit facility, $88.4 million outstanding under Viasat's Ex-Im credit facility and Inmarsat's $2.4 billion of senior secured credit facilities. Upon closing, the combined company is expected to have a fully funded path to generating positive free cash flow on a timeline substantially consistent with Viasat's previous standalone guidance. Assuming

closing occurs during the second half of calendar year 2022, Viasat's pro forma net leverage ratio at December 31, 2022 is projected to be approximately 5.0x LTM Adjusted EBITDA and is expected to decline to less than 4.0x within 24 months thereafter.

**Leadership, governance and closing conditions**

The transaction has been unanimously approved by the boards of directors of both Viasat and Inmarsat. In addition, The Baupost Group, L.L.C., Viasat's largest shareholder, has agreed to vote in favor of the transaction. At the closing of the transaction, Viasat intends to expand its board of directors from eight to ten members, with Andrew Sukawaty, current chairman of Inmarsat, being appointed as one of the two new board members. A second new board member will be appointed at transaction closing by the current Inmarsat shareholders.

During the period prior to the closing of the transaction, Viasat expects members of Inmarsat's management team to continue to execute its strategy and provide leadership, in-depth industry knowledge and customer relationship support. Decisions regarding management of the combined company following the closing of the transaction will be made as part of the integration planning process.

The transaction is expected to close in the second half of calendar year 2022, subject to the approval of Viasat stockholders, the receipt of certain regulatory approvals and clearances and the satisfaction of other customary closing conditions.

**B.  The Materially Incomplete and Misleading Proxy**

21.     On May 20, 2022, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Stock Issuance. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Stock Issuance.

> ***Materially Incomplete and Misleading Disclosures Concerning PJT Partners' Financial Analyses***

22.     With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose: (a) the terminal values for each company; and (b) the key data, inputs, and assumptions forming the basis of the applied discount rates of 7.5% to 8.5% for Inmarsat and 8.0% to 9.0% for Viasat.

23.     With respect to the *Selected Precedent M&A Transactions Analysis*, the Proxy fails to disclose the multiples for each transaction studied. Specifically, the Proxy fails to disclose the specific financial multiples and metrics for each of the transactions contained in the analysis.

### Materially Incomplete and Misleading Disclosures Concerning PJT Partners' Potential Conflicts of Interest

24.     The Proxy also fails to disclose material information concerning potential conflicts of interest faced by PJT Partners.

25.     Specifically, the Proxy fails to disclose: (a) the amount by which "the transaction fee payable to PJT Partners may be increased"; and (b) if the Company expects to increase PJT Partners' transaction fee.

26.     Additionally, the Proxy fails to disclose the compensation PJT Partners received from affiliates of Viasat, Inmarsat, and the "Sellers" for services PJT Partners rendered to each of these entities in the past years preceding the date of issuance of its fairness opinion.

27.     The Proxy also fails to disclose the compensation PJT Partners anticipates receiving for its services in arranging financing for the Proposed Transaction.

28.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Stock Issuance and the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

29.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Stock Issuance and the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

30.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

31.     Further, the Proxy indicates that on November 7, 2021, PJT Partners reviewed with the Board its financial analysis of the Proposed Transaction and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Proposed Transaction was fair, from a financial point of view to Viasat stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning PJT Partners' financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

32.     Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that they will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Defendants have filed the Proxy with the SEC with the intention of soliciting Viasat stockholder support for the Stock Issuance. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

35. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Viasat, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) the value of Viasat shares and the financial analyses performed by PJT Partners in support of its fairness opinion; and (ii) potential conflicts of interest concerning PJT Partners.

38. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Stock Issuance and the Proposed Transaction; indeed, the Proxy states that PJT Partners reviewed and discussed its financial analyses with the Board during various meetings including on November 7, 2021 and further states that the Board considered PJT Partners' financial analyses and fairness opinion in connection with approving the Stock Issuance and the Proposed Transaction. The Individual Defendants knew or should have known that the material information

identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

39.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Stock Issuance. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Viasat within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Viasat and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Stock Issuance and the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Stock Issuance. They were, thus, directly involved in the making of the Proxy.

44.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to

the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to Viasat stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Stock Issuance and/or the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.     In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 3, 2022

**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*

Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*